IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE DELANEY, | No. C 05-00756 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION** |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Now before the Court are the parties' cross motions for summary judgment on plaintiff's complaint seeking judicial review of the denial of her Social Security Disability Benefits. Having carefully considered the parties' papers, the Court GRANTS plaintiff's motion for summary judgment, DENIES defendant's cross-motion for summary judgment and REMANDS the action to the Commissioner for further proceedings consistent with this order.

**BACKGROUND**

Plaintiff, Anne Delaney, seeks judicial review of the final decision of the Commissioner of Social Security denying her request for Social Security Disability Insurance Benefits and Supplemental Security Income payments ("benefits"). Plaintiff alleges disability as a result of chronic bilateral arm/wrist tendinitis, thoracic outlet syndrome, fibromyalgia, myofascial pain disorder, and adjustment disorder with mixed anxiety and depressed mood. Pl.'s Mot. 3:12-13. Plaintiff is currently 48 years old. Plaintiff last performed gainful employment in April, 1993. R. at 22 (ALJ Hallam's Order). She has a bachelor's degree in music composition and prior to her disability, she worked as a paralegal, teacher, and clerical supervisor. *Id.*

Plaintiff filed an application for benefits on March 10, 1994. *Id.* The claim was denied, initially and on reconsideration. Plaintiff appealed, and a hearing was held before Administrative Law Judge ("ALJ") Charlotte Hallam. On March 13, 1996, Judge Hallam issued an order finding that plaintiff could not resume her previous employment; however, ALJ Hallam concluded that plaintiff was not disabled because she could perform alternative jobs. *Id.* at 28. Plaintiff requested a review of the decision, and the Appeals Council denied the request. On April 3, 1998, this Court affirmed the final decision. On June 16, 1999, the Ninth Circuit reversed and remanded because the testimony of the vocational expert ("VE") conflicted with the Dictionary of Occupational Titles ("DOT") and the Selected Characteristics of Occupations ("SCO"). *Id.* at 537 (Ninth Circuit Order). The VE testified that plaintiff could only perform unskilled work, but he also testified that plaintiff could perform work as a security guard and receptionist, which are categorized as semiskilled in the DOT and SCO. *Id.*

On remand, the case was heard by a second ALJ, Patrick Hannon. On June 12, 2001, Judge Hannon found that plaintiff was not disabled. In his ruling, Judge Hannon considered and rejected the medical opinions of Drs. Danylchuk, Herbard, and Weinlander, which plaintiff obtained after the case was heard by Judge Hallam. *Id.* at 425-27 (ALJ Hannon's Order). Plaintiff objected to the decision because Judge Hannon did not determine why the VE testimony conflicted with the DOT and SCO, the issue for which the case was remanded. The Appeals Council agreed with plaintiff and remanded the case to another ALJ for further proceedings. The Appeals Council instructed the ALJ to determine why the testimony of the VE conflicted with DOT and SCO. *Id.* at 698 (Appeals Council Remand Order). The third ALJ, Brenton Rogozen, held a supplemental hearing, determined the reason for the discrepancy, and ultimately found that plaintiff was capable of performing jobs as a security guard, receptionist, or information clerk. *Id.* at 708 (Judge Rogozen's Order). Judge Rogozen also considered and rejected an additional medical opinion from Dr. Karalis regarding plaintiff's mental state. Plaintiff appealed and the Appeals Council declined to accept jurisdiction. Plaintiff appealed to this Court, and the case is now before the Court on cross-motions for summary judgment.

## LEGAL STANDARD

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the

Social Security Act. The statute authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if substantial evidence supports the ALJ's factual findings, the decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

When a reviewing court concludes that the ALJ's findings are based on legal error or not supported by the record, the court may set aside the decision and direct payment of benefits or remand the case for a new hearing. *See Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F. 2d 631, 635 (9th Cir. 1981). Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate. *See id.* The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *See id.*; *see also Sprague*, 812 F.2d at 1232.

**DISCUSSION**

**I.    Vocational Expert Testimony**

As an initial matter, the parties dispute whether the second VE, Scott Simon, gave sufficient reasons for the deviation between the DOT and the original VE's testimony, which was the reason the Ninth Circuit remanded the case. During the hearing before the first ALJ, the VE testified that plaintiff could perform jobs such as a security guard, receptionist or information clerk. *See* R. at 26. The ALJ found that Delaney "does not have any acquired work skills which are transferable to the skilled or *semiskilled* work functions of other work." *Id.* at 27-28 (emphasis added). However, according to the DOT, the jobs which the VE testified plaintiff could perform, were categorized as "semiskilled."

The DOT creates a rebuttable job classification presumption and an ALJ may only rely on expert testimony that contradicts the DOT when the record contains persuasive evidence to support the

deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Because the testimony did not coincide with the DOT and the VE did not give any reason for this deviation, the Ninth Circuit held that substantial evidence did not support the ALJ's conclusion that plaintiff could perform jobs as a security guard, receptionist, or information clerk.

On remand, during the supplemental hearing before Judge Rogozen, the second VE, Scott Simon, testified that the actual requirements for a security guard, receptionist and information clerk position vary, and in this region the three jobs are considered unskilled. R. at 707. He further explained that the DOT was created in the 1970's and there has not been a concise update to these publications in the last five to ten years. *Id.* The VE also explained that the job requirements could be met by someone, such as plaintiff, who has limited use of her hands. He further testified that there are approximately 18,000 security guard jobs in the regional economy, and 4,000 to 5,000 of these are primarily surveillance monitor jobs which require little walking. *Id.* The VE also testified that there were 5,000 to 6,000 unskilled clerk jobs and approximately 12,000 unskilled receptionist jobs in the regional economy. *Id.* at 708.

The Court finds that ALJ properly concluded that plaintiff could perform a job as a security guard, receptionist, or information clerk. Although these are listed as being semiskilled, the VE sufficiently explained why these jobs have different skill levels in the regional economy. Furthermore, the VE explained that the job requirements could be met by someone with a limited ability to use his or her hands. For the foregoing reasons, ALJ Rogozen's decision that plaintiff can obtain gainful employment is supported by substantial evidence.

**II.     Physicians' Opinions**

Plaintiff argues that the final ALJ, Rogozen, was required to consider all relevant evidence which arose after the Ninth Circuit remanded the case, including the additional medical opinions of Drs. Herbard, Weinlander, and Danylchuk, which were already considered by Judge Hannon.[1]

---

[1] When the case was appealed to the Ninth Circuit, it considered the opinions of Dr. Brose and Dr. Danylchuk. The Ninth Circuit held that the ALJ's decision to reject the doctor's opinions was supported by substantial evidence.

4

After the initial decision by Judge Hallam, plaintiff sought additional medical treatment from Drs. Herbard, Weinlander, and Danylchuk. During the 2001 hearing, Judge Hannon considered the opinions of these doctors. Judge Hannon discredited Dr. Danylchuk's opinion because Dr. Danylchuk concluded that plaintiff was disabled based on plaintiff's physical signs and symptoms, and Dr. Danylchuk is a psychiatrist. *See* R. at 425. ALJ Hannon concluded that this was beyond her expertise. *Id.* ALJ Hannon discredited Dr. Weinlander's opinion because her report stated that plaintiff had significant lifting, sitting, standing, and walking limitations, but she also wrote that this was per plaintiff's complaints. *Id.* at 426. Finally, ALJ Hannon discredited Dr. Herbard's opinion because plaintiff informed Dr. Herbard that she was diagnosed with fibromyalgia and ALJ Hannon found this was not supported by substantial evidence. *Id.* Judge Hannon also noted that it appeared that Dr. Herbard's opinion was unduly influenced by plaintiff's reported history and subjective complaints. *Id.* at 427. Judge Hannon did not consider why the VE testimony conflicted with the DOT and SCO, which was the reason why the Ninth Circuit remanded the case.

As discussed, after Judge Hannon issued his opinion, the Appeals Council assumed jurisdiction and remanded the case for further proceedings. The Appeals Council's order stated that the subsequent ALJ was to determine why the VE testimony conflicted with the DOT and SCO, and issue a "new decision." *Id.* at 698. The final ALJ, Rogozen, held a supplemental hearing and discovered why the VE testimony conflicted with the DOT and SCO. Judge Rogozen also considered an additional medical opinion, from Dr. Karalis, who plaintiff visited between Judge Hannon's order and the hearing before Judge Rogozen.

Plaintiff argues that ALJ Rogozen was obligated to adjudicate the entire period after the Ninth Circuit remanded the case because the Appeals Council ordered the ALJ to issue a "new decision." Plaintiff also relies on 20 C.F.R. § 404.983 for this proposition, which discusses cases that have been remanded. It states, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceeding leading to the final decision in your case." 20 C.F.R. § 404.983. Plaintiff argues that because Judge Rogozen did not consider the prior medical treatment from Drs. Herbard, Weinlander, and Danylchuk, there is reversible error.

The instruction from the Appeals Council to issue a new decision is ambiguous. The language

5

could be interpreted as requiring ALJ Rogozen to issue a new decision including all of the issues that arose after the Ninth Circuit remanded the case, or it could be interpreted as requiring the ALJ to issue a new decision discussing only why the VE testimony conflicted with the DOT.  The Court finds the latter interpretation compelling.  The order from the Appeals Council discussed the fact that the Judge Hannon did not explain why the VE testimony conflicted with the DOT.  It did not discuss the new medical opinions submitted by plaintiff.  Furthermore, the order from the Appeals Council did not vacate Judge Hannon's order, it merely remanded the case.

Contrary to claimant's contention, ALJ Rogozen was not required to include the prior medical opinions based on 20 C.F.R. § 404.983.  This section merely states that additional claims may be brought before the ALJ prior to the conclusion of the case.  It does not state that the final decision must summarize or revisit all the previous findings.  The Court thus finds that Judge Rogozen was not required to reevaluate the medical opinions which ALJ Hannon considered.  The decisions by Judge Hannon and Judge Rogozen, taken together, are the "final decision" that this Court must review.

The Court finds that ALJ Hannon gave clear and convincing reasons for rejecting the opinions of Drs. Herbard, Weinlander, and Danylchuk.  *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990) (stating that the ALJ must give clear and convincing reasons for rejecting the uncontradicted opinion of a treating or examining physician).  ALJ Hannon sufficiently explained the reason for rejecting each doctor's opinion.  As discussed above, he noted that Dr. Danylchuk's opinion was based on symptoms beyond her expertise, and that Drs. Herbard and Weinlander appeared to base their opinions too heavily on plaintiff's subjective complaints.  *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (stating that an ALJ need not accept the opinion of a physician if it is conclusory, brief, and not supported by clinical findings).  For the foregoing reason, the Court finds that ALJ Hannon gave clear and convincing reasons for rejecting the doctors' opinions.

Following the hearing before ALJ Hannon, plaintiff sought a psychiatric evaluation from Dr. Karalis.  In his narrative report, Dr. Karalis observed that plaintiff was "moderately severely depressed" and had "concentration and short-term memory problems." R. at 693.  In his medical functional capacity assessment containing his final evaluations, Dr. Karalis concluded that plaintiff had "no useful ability to function" in nine categories of "making occupational adjustments," in three categories of "making

6

performance adjustments," and in three categories of "making personal-social adjustments." *Id*. at 694-695. ALJ Rogozen rejected Dr. Karalis' report on the grounds that he was not a treating physician, that he only examined plaintiff once and for the sole purpose of advancing her disability claim, that plaintiff did not appear depressed at the hearing, and that the limitations Dr. Karalis described were not supported by the clinical data or the one-time evaluation. *Id*. at 709.

The Court finds that the ALJ did not properly consider Dr. Karalis' opinion. While it is true that more weight is generally given to opinions from treating physicians (20 C.F.R. § 416.927(d)(2)), an ALJ must still provide "clear and convincing" reasons for rejecting the uncontroverted opinions of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). The ALJ improperly considered the fact that plaintiff sought medical reports solely to advance her social security claim, as "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). Furthermore, the ALJ noted that plaintiff did not appear depressed at the hearing; however, in cases involving alleged psychological impairment, the ALJ's observation of the claimant at the hearing "does not provide a sufficient reason to reject otherwise uncontroverted medical evidence." *Montijo v. Secretary*, 729 F.2d 599, 602 (9th Cir. 1999).

The Court further holds that the ALJ improperly rejected Dr. Karalis' conclusions as unsupported by the doctor's clinical findings. To reject the uncontroverted opinions of a medical expert on such a basis, an ALJ must do more than simply conclude that the opinions were not supported by sufficient objective data. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must set forth his own interpretations of the clinical data and explain why they, rather than the doctor's, are correct. *Id*. Even then, the subjective conclusions of the physician should be given substantial weight. *Id*. at 422.

With respect to the lack of support for Dr. Karalis' conclusions, ALJ Rogozen stated only that "[t]he marked limitations Dr. Karalis described on the mental functional capacity assessment (poor to none in all areas) are not supported by clinical data or by the one-time evaluation findings." R. at 709. This explanation is not sufficiently specific. *See Embrey* at 421.

Because the ALJ did not provide clear and convincing reasons for rejecting Dr. Karalis' opinion,

7

the case is remanded for further proceedings.

### III.  Plaintiff's Testimony

Plaintiff argues that the ALJ did not properly consider her subjective complaints.[2] To reject a plaintiff's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  Once plaintiff has established an underlying medical impairment and there is an absence of evidence that the plaintiff is malingering , the ALJ must give clear and convincing reasons for rejecting the subjective complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJ Hannon considered plaintiff's subjective complaints and discredited them because plaintiff had very little medical treatment since the prior ALJ's decision, plaintiff used alternative forms of treatment, and plaintiff relied on mild over-the-counter pain relievers.  *See* R. 427. The ALJ noted this did not coincide with someone who was suffering from disabling pain.  The Court finds ALJ Hannon adequately considered plaintiff's subjective complaints and sufficiently explained his reasons for rejecting her complaints.

### IV.  Vocational Hypothetical

Plaintiff also argues that the ALJ's vocational hypothetical was legally invalid because it did not include all of her limitations.  *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988).  Because the ALJ did not give clear and convincing reasons for rejecting Dr. Karalis' opinion, the hypothetical should have included plaintiff's mental impairment.  For the foregoing reasons, the Court finds that the vocational hypothetical was invalid.

///

---

[2] Plaintiff also argues that the ALJ did not properly consider lay witness testimony.  The Ninth Circuit considered this argument and found that it lacked merit.  R 535.

8

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross motion for summary judgment. The case is hereby remanded for further proceedings.

**IT IS SO ORDERED.**

Dated: February 24, 2007

SUSAN ILLSTON
United States District Judge